**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GREGORY CHIRSTOFAKIS,<br>Plaintiff, | : | CASE NO. 3:16-cv-1385 (VAB) |
| v. | : | |
| SCOTT SEMPLE, et al.,<br>Defendants. | : | MARCH 7, 2017 |

**INITIAL REVIEW ORDER**

Plaintiff, Gregory Christofakis, currently incarcerated at the Osborn Correctional Institution, filed this Complaint *pro se* under 42 U.S.C. § 1983, on June 27, 2016. Mr. Christofakis tendered the filing fee to commence this action on September 20, 2016. The Defendants are Commissioner Scott Semple, Warden Anne Cornouyer, Deputy Warden Mulligan, Captain Tuttle, Counselor Christina Schaeffer, Correctional Officer Weimel, Correctional Officer Borcier, Johnny Wu, Richard Furey, Nurse Paul Wilber, Nurse Nancy Hill, Dr. Carson Wright and Dr. Joseph Breton. Mr. Christofakis challenges his placement at Northern Correctional Institution as a pretrial detainee, the disregard for his medical conditions and his medical care. Mr. Christofakis seeks damages from Defendants.

## I. Standard of Review

Under 28 U.S.C. § 1915A(b) of the United States Code, the Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the Court must assume the

truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II. Allegations

Mr. Christofakis was a pretrial detainee until he was sentenced on November 16, 2015. As a result of prison overcrowding and his bail being set at $1,000,000, Mr. Christofakis was sent to Northern Correctional Institution ("Northern").

Upon his arrival at Northern, Mr. Christofakis allegedly provided copies of medical records documenting a spinal injury. He claims that these documents were placed in his medical file. Mr. Christofakis states that, when he was admitted to Northern, he weighed 330 lbs, was morbidly obese, and suffered from cardiac and other medical issues.

On October 7, 2014, Mr. Christofakis claims that he was assigned a cellmate who was 65 years old. Correctional staff allegedly told them to work out the bunk assignments. According

to Mr. Christofakis, his cellmate did not mind the top bunk, and Mr. Christofakis retained the bottom bunk. On October 9, 2014, Mr. Christofakis was allegedly sent to behavior observation for twenty-four hours. Upon his return to his cell, Captain Tuttle allegedly told Mr. Christofakis he would have to use the top bunk because of his cellmate's age. Mr. Christofakis alleges that Captain Tuttle refused to listen when Mr. Christofakis explained that he required the bottom bunk because of his spinal injury. Mr. Christofakis claims that he feared that he would be sent to segregation and accepted the top bunk. Captain Tuttle allegedly refused to check Mr. Christofakis' medical file. Captain Tuttle allegedly stated to Mr. Christofakis that there was no record of a bottom bunk pass and noted that Northern does not issue bottom bunk passes.

Nurses Hill and Wilber allegedly brought Mr. Christofakis his daily medications. According to Mr. Christofakis, they were aware of both his medical history and a bottom bunk pass but did nothing to correct the situation. The nurses allegedly observed the difficulty experienced by Mr. Christofakis in getting down from the top bunk but said nothing. Mr. Christofakis claims that he explained to Counselor Schaeffer that his cellmate was willing to switch bunks, but his request for the switch was allegedly denied. Other requests submitted by Mr. Christofakis on this issue also were allegedly denied.

Mr. Christofakis claims that, on October 7, 2014, he fell while trying to get down from the top bunk. He allegedly hit his buttocks, hip, head, neck and shoulder on the floor, causing a disc compression. When Mr. Christofakis reported the fall to Correctional Officers Weimel and Borcier, they allegedly noted it in the log book but did not call for any medical care. Days after the incident, Mr. Christofakis allegedly complained to nurses and other Defendants about the fall and the requirement that he be on the top bunk. He was allegedly told that his assignment was

by order of the captain.

Mr. Christofakis alleges that Captain Tuttle and Deputy Warden Mulligan told Mr. Christofakis he should be careful because he could be moved to another cell and again required to use the top bunk. Mr. Christofakis also alleges that, when Nurse Vicki returned from vacation, she arranged for Mr. Christofakis' cellmate to be moved, thereby allowing Mr. Christofakis to use the bottom bunk. On November 12, 2014, Mr. Christofakis was allegedly seen by the medical unit in response to his complaints from the fall, and Dr. Wright allegedly ordered x-rays.

On February 19, 2015 and June 23, 2015, Mr. Christofakis claims that he received lumbar epidural steroid injections to address his complaints of pain. The injections allegedly had no effect on Mr. Christofakis' injuries. A January 5, 2016 MRI allegedly showed numerous diffuse disc bulges and compression on the existing nerve root of two discs. Mr. Christofakis attributes these injuries to his fall.

Several times, Mr. Christofakis allegedly asked Defendant Furey for a new mattress to address his back pain. Defendants Furey and Wu allegedly denied these requests, stating that Mr. Christofakis could get a new mattress only if he had a skin breakdown.

Dr. Breton allegedly saw Mr. Christofakis on January 26, 2016. Dr. Breton allegedly reviewed Mr. Christofakis' MRI report and told Mr. Christofakis he would call him to the medical unit for further discussion and treatment. Mr. Christofakis claims that he has received no treatment from that date until he filed this Complaint.

Mr. Christofakis alleges that his wife began calling Defendant Furey asking about her husband's medical condition and seeking information regarding treatment. Defendant Furey

allegedly provided no information. He allegedly found a terminated protective order in Mr. Christofakis' file and used it on April 7, 2016, to prevent Mr. Christofakis from communicating with his wife. Mr. Christofakis claims that Defendant Furey acted in retaliation for his wife's telephone calls regarding Mr. Christofakis' medical condition.

## III. Discussion

Plaintiff asserts three claims in his Complaint: (1) unjust confinement at Northern while in pretrial detainee status, (2) deliberate indifference to serious medical needs, and (3) retaliation.

To state a claim for retaliation, Mr. Christofakis must allege facts showing that he was engaged in constitutionally protected activity, that the defendant took adverse action against him, and that there is a causal connection between the protected activity and the adverse action. *See Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003). For example, filing grievances or lawsuits against correctional staff is a protected activity that can support a retaliation claim. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right." (citation omitted)).

The Second Circuit requires inmates to allege specific and detailed facts to support a retaliation claim. Conclusory allegations of retaliation are properly dismissed. *See Johnson*, 8 F. App'x at 144. Because of the potential for abuse and the ease with which conduct that is not unconstitutional may be characterized as retaliatory, claims by prisoners for retaliation must be examined with "skepticism and particular care." *Davis*, 320 F.3d at 352 (internal quotation marks omitted) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

Mr. Christofakis alleges that Defendant Furey used a terminated protective order to prevent Mr. Christofakis from communicating with his wife in retaliation for the wife's calls seeking information regarding Mr. Christofakis' health and treatment. The claim is based on actions taken by Mr. Christofakis' wife, not actions that Mr. Christofakis took. It is well-settled that "[i]n order to state a claim for retaliation under section 1983, a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of N.Y.*, 210 F.3d 79, 85–86 (2d Cir. 2000) (internal citations and marks omitted). Mr. Christofakis has not alleged that Defendant Furey's actions were in response to any constitutionally protected actions that Mr. Christofakis himself took, nor has he alleged any facts showing a connection between his own protected activity and Defendant Furey's allegedly retaliatory actions.[1] Mr. Christofakis cannot state a retaliation claim without showing that Defendant Furey's conduct was in response to his protected activity. *Id.* Thus, Mr. Christofakis' retaliation claim is dismissed under 28 U.S.C. § 1915A(b)(1).

Mr. Christofakis' challenge to being placed at Northern as a pretrial detainee will proceed at this time. "[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535

---

[1] The Court has not been able to identify any binding case law recognizing a retaliation claim based solely on speech made by an individual who is not the plaintiff. In *Aref v. Holder*, the United States District Court for the District of Columbia allowed a retaliation claim to proceed based in part on allegations that the plaintiff, an inmate, had asked his wife to contact the prison regarding the plaintiff's access to certain legal documentation. 774 F. Supp. 2d 147, 169 (D.D.C. 2011). The retaliation claim in that case, however, was not based solely on the speech of the plaintiff's wife; it was also based on the plaintiff's known history of filing lawsuits and formal grievances. *See id*. Here, Mr. Christofakis' retaliation claim is based solely on phone calls from his wife, and there are no factual allegations suggesting that Mr. Christofakis directed his wife to make those statements. Accordingly, this claim is properly dismissed.

(1979). In determining whether a pre-trial detainee's rights have been violated, the Court must balance the detainee's "liberty interest in freedom … against the state's reasons for restraining that liberty." *Benjamin v. Fraser*, 264 F.3d 175, 188 (2d Cir. 2001). Mr. Christofakis alleges that his placement in a high security prison was not justified, and he claims that his detention at this level of prison before conviction amounted to punishment in violation of the Due Process Clause. Thus, Mr. Christofakis' claim with respect to his detention as a pretrial detainee will proceed at this time.

Mr. Christofakis' claim of deliberate indifference to serious medical needs, based on the failure to honor his bottom bunk pass and treat injuries suffered when he fell from the top bunk, will also proceed at this time. Two basic elements are required in order to prevail on a deliberate indifference to medical needs claim: the plaintiff must show "a 'serious medical condition' and that it was met with 'deliberate indifference.'" *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000) (quoting *Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996)). Mr. Christofakis has alleged that he suffered from severe back pain and that Defendants, despite having knowledge of his condition, refused to make several accommodations, exacerbating his condition. Taking these allegations as true and construing them liberally, *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007), the Court concludes that Mr. Christofakis has stated an actionable claim.

**ORDERS**

In accordance with the foregoing analysis, the Court enters the following orders:

(1) The retaliation claim against Defendant Furey is **DISMISSED** without prejudice under 28 U.S.C. § 1915A(b)(1). Within twenty (20) days of this Order, Mr. Christofakis may

amend his Complaint to include factual allegations linking Mr. Christofakis' own protected activity to Defendant Furey's allegedly retaliatory misconduct.

(2) As Mr. Christofakis has paid the filing fee to commence this action, he is responsible for effecting service in accordance with Rule 4, Fed. R. Civ. P. **Mr. Christofakis shall** serve the defendants in their individual capacities within **ninety (90) days** from the date of this order and file a return of service within **ninety-five (95) days** from the date of this order.

(3) **The Clerk of the Court shall** send written notice to Mr. Christofakis of the status of this action, along with a copy of this Order.

(4) **The Clerk of the Court shall** send a courtesy copy of the Complaint and this Ruling and Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver form is sent or within thirty (30) days following personal service. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, under Federal Rules of Civil Procedure 26 through 37, shall be completed within eight months (240 days) from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within nine months (270 days) from the date of this order.

(8) Under Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Mr. Christofakis changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. Mr. Christofakis must give notice of a new address even if he is incarcerated. Mr. Christofakis should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Mr. Christofakis has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Mr. Christofakis should also notify the defendant or the attorney for the defendant of his new address.

(10) Mr. Christofakis shall utilize the Prisoner E-filing Program when filing documents with the court.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of March, 2017.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE